CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
May 28, 2024
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
      DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CAROLYN BARNES, *Plaintiff*, v. USAA FEDERAL SAVINGS BANK, *Defendant*. | CASE NO. 3:23-cv-51<br><br>MEMORANDUM OPINION & ORDER<br><br>JUDGE NORMAN K. MOON |

Plaintiff Carolyn Barnes brings multiple claims relating to a home equity line of credit against Defendant USAA Federal Savings Bank. This matter is before the Court on USAA's Motion to Dismiss, Dkt. 17. For the reasons stated below, the Court will **grant** USAA's motion except as to Plaintiff's claims under the Fair Credit Reporting Act.

I. BACKGROUND[1]

Plaintiff Carolyn Barnes is a homeowner. Dkt. 11 ¶ 4. In September 2020, she separated from her ex-husband, Michael Barnes. ¶ 32. At the time of the separation, her ex-husband deeded all his interest in their marital home to her. ¶ 32. Plaintiff and her ex-husband had home insurance and a home equity line of credit (HELOC) with USAA. ¶¶ 25, 34. The HELOC had a $75,000 credit limit. ¶ 42. At the time when Plaintiff became the sole owner of the home, the HELOC had a zero balance. ¶ 33. However, *after* Plaintiff and her husband separated but before his unilateral withdrawals, the two of them drew $25,000 on the HELOC for home

---

[1] The following facts are alleged in Plaintiff's First Amended Complaint, Dkt. 11, and are assumed true for purposes of resolving this motion. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

improvements. Dkt. 17-5 at page 5, ¶ 6.[2]

Plaintiff notified USAA that she was the sole owner of the insured property. ¶ 34. USAA updated the insurance policy to show her name alone as owner of the home, and provided access to insurance documents through its online portal. *Id.* Plaintiff stopped receiving information about the HELOC, and it did not appear in her USAA online portal. ¶ 35. Plaintiff alleged that she assumed the HELOC account was closed. ¶ 37.

Unbeknownst to Plaintiff, in approximately December 2020 her ex-husband had changed the address associated with the HELOC account. ¶ 39. Although the HELOC still attached to the home which was Plaintiff's sole property, statements about the balance were sent only to the ex-husband at his separate residence. *Id.* Between June and October 2022, he ran up some $350,000 in loans, despite the HELOC's $75,000 credit limit, in order to send money to online romance scammers. ¶¶ 38, 40. Plaintiff asserts that USAA failed to realize that it had extended credit beyond the credit limit established in the HELOC agreement. ¶ 41.

Plaintiff learned about the HELOC balance around September 2022. ¶ 50. USAA refused to send Plaintiff the HELOC monthly statements when she asked. ¶ 55. USAA told her to access HELOC information in her online portal, which did not have HELOC information (and still did not display the HELOC account at the time the Amended Complaint was filed). ¶¶ 55, 35. Eventually, Plaintiff's divorce attorney got a subpoena for the HELOC records, at which point

---

[2] This fact is drawn from the Separation and Property Settlement Agreement adopted in the divorce, which Plaintiff refers to in the Complaint (Dkt. 11 ¶ 52) and which USAA filed in its entirety as an exhibit. Dkt. 17-5 at 5. A court may "consider documents ... attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Plaintiff has raised no objection based on authenticity. The Complaint refers to this document, which memorializes Mr. Barnes' acknowledgement of his draws on the HELOC. Dkt 11 ¶ 52. As the Settlement Agreement bears on the legal relationships of Plaintiff and her ex-husband to the HELOC, the Court considers it integral to the Complaint and claims therein.

USAA turned them over, in December 2022. ¶ 56.

The HELOC balance appeared on Plaintiff's credit reports. ¶ 58. She disputed this directly with USAA and through three sets of dispute letters sent to credit reporting agencies (CRAs). ¶¶ 58-62; 68–69; 75–77. The CRAs forwarded dispute letters to USAA, but USAA "performed only a cursory review" without consulting underlying documents or all the information provided with the dispute letters. ¶¶ 64–65; 71–72; 78–79. USAA did not provide any notation indicating that the HELOC balance was disputed. ¶¶ 66, 73, 80.

Plaintiff alleges that USAA breached the HELOC contract by changing the terms of the contract without permission; by failing to realize that it was offering advances over the credit limit, leading to the $350,000 balance; and by "caus[ing] [Plaintiff] to be removed from the HELOC account entirely without the express written permission of" Plaintiff or her ex-husband. ¶¶ 127–32. Plaintiff also argues that, because the "I" in the HELOC contract is defined as "all borrowers signing this Agreement, jointly and individually" (Dkt. 11-1, ¶ 1(a)) and the contract requires USAA to send periodic statements to "me" (*Id.* ¶ 28), USAA breached the contract by failing to mail periodic statements individually to Plaintiff. Dkt. 11 ¶ 131.

Plaintiff brings five claims. The first three are under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)(1), in which she alleges that:

1. USAA failed to fully and properly investigate her dispute about her liability for the HELOC loan. 15 U.S.C. § 1681s-2(b)(1)(A).
2. USAA failed to review all relevant information provided by the credit reporting agencies. 15 U.S.C. § 1681s-2(b)(1)(B).
3. USAA failed to indicate that the account was disputed. 15 U.S.C. § 1681s-2(b)(1)(C) and (D).

Her final two claims are:

4. For breach of contract or in the alternative, breach of the covenant of good faith and fair dealing, based on USAA's conduct as to the HELOC agreement.

5. A declaratory judgment that USAA has waived its right to enforce the HELOC debt against her. 28 U.S.C. § 2201.

USAA argues that Plaintiff fails to state any causes of action, primarily because all of the actions it took were within the terms of the HELOC contract and Plaintiff fails to show that it actually reported any inaccurate information. USAA also posits that joinder of Michael Barnes, Plaintiff's ex-husband, is necessary.

## II.  LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all its allegations taken as true and all reasonable inferences drawn in a plaintiff's favor, *Rubenstein*, 825 F.3d at 212. A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotation marks omitted). This is not

to say Rule 12(b)(6) requires "heightened fact pleading of specifics," instead a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (providing that "only a complaint that states a plausible claim for relief survives a motion to dismiss").

### III. DISCUSSION

#### a. Plaintiff's FCRA Claims

Plaintiff brings Claims 1, 2, and 3 under the Fair Credit Reporting Act. Specifically, she looks to the FCRA's provision laying out the duties of a "furnisher." A furnisher is a party providing information to a Credit Reporting Agency ("CRA"). 15 U.S.C. § 1681s-2(b)(1). The statutory duties take effect when the furnisher is notified of a dispute "with regard to the completeness or accuracy of any information provided … to a credit reporting agency[.]" *Id*. The furnisher must:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis[.]

*Id.*

Plaintiff asserts that when notified of her dispute, USAA failed to conduct a reasonable investigation in violation of Subsection A (Claim 1); failed to review all the relevant information that the CRAs provided in violation of Subsection B (Claim 2); and failed to indicate that Plaintiff disputed her liability for the HELOC account, in violation of Subsections C and D (Claim 3). Dkt. 11 ¶¶ 86–121.

USAA argues that all of the Plaintiff's FCRA claims fail because her claims are rooted in

5

a "contract dispute" rather than a factual inaccuracy[3] that USAA relayed to CRAs. Dkt. 17-2 at 18. USAA relies on an unpublished case in which a borrower brought suit against both CRAs and a furnisher: *Perry v. Toyota Motor Credit Corp.*, No. 1:18CV00034, 2019 WL 332813, at *1 (W.D. Va. Jan. 25, 2019) (Jones, J.). USAA takes *Perry* to stand for the proposition that all of Plaintiff's claims fail, because she disputes her liability on the HELOC based on a legal defense, rather than a factual inaccuracy. Dkt. 17-2 at 18–19.

However, a dispute itself can trigger a furnisher's reporting requirement. In *Saunders v. Branch Banking and Trust Co. of Virginia*, a plaintiff sued BB&T under § 1681s-2(b)(1) for failing to note the *disputed* nature of his debt. 526 F.3d 142, 145 (4th Cir. 2008). The plaintiff had bought a car with a loan; the dealer assigned the loan to BB&T. *Id.* at 145. The plaintiff repeatedly asked BB&T for information about his liability, but BB&T repeatedly told him that he owed no money on any loan. *Id.* Then, some seven months later, BB&T abruptly informed the plaintiff that he was seriously delinquent and that the full amount of the loan, plus late fees, was due immediately. *Id.* The plaintiff disputed that he was liable for late fees or penalties. *Id.* at 145–46. BB&T then repossessed the car, and furnished information to a CRA indicating first that the account was in repossession status, and then that the loan was a "writeof[f]"—which greatly damaged the plaintiff's credit score. *Id.* at 146. At no point did BB&T report the disputed nature of the account. *Id.* A jury awarded the plaintiff compensatory and punitive damages; BB&T appealed the court's denial of its motion for judgment as a matter of law. *Id.* at 145.

The Fourth Circuit stated that "given the evidence before it, the jury could reasonably

---

[3] For FCRA purposes, "a report 'is inaccurate' not only 'when it is patently incorrect' but also 'when it is misleading in such a way and to such an extent that it can be expected to [have an] adverse[ ] effect.'" *Saunders v. Branch Banking and Tr. Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008) (quoting *Dalton v. Cap. Assoc. Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (internal quotations omitted)).

conclude that BB & T's decision to report the debt without *any* mention of a dispute was misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Id.* at 150 (internal quotation omitted).

Under *Saunders*, failing to report the disputed status of a debt can violate the accurate reporting requirements of § 1681s–2(b). Here, Plaintiff alleges that she disputed the $350,000 liability in direct communication to USAA and also through dispute letters to CRAs (Equifax, Experian, and TransUnion). Dkt. 11 ¶¶ 58–61.

In *Saunders*, the Court of Appeals "assume[d] without deciding that a furnisher incurs liability under § 1681s–2(b) only if it fails to report a meritorious dispute." 526 F.3d at 151. The Fourth Circuit has not defined the parameters of a "meritorious" dispute. Citing *Saunders*, the Ninth Circuit has stated that FCRA liability arises from failure to report "a bona fide dispute, a dispute that could materially alter how the reported debt is understood[.]" *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009). An opinion from the District of Minnesota synthesized *Gorman* and *Saunders* to find that a dispute is "bona fide or potentially meritorious" when it (1) is relevant to the disputed credit line provided by the furnisher, (2) is generally factually correct and provides sufficient factual notice of the nature of the dispute, and (3) "suggests that a borrower is less financially irresponsible than the undisputed report tends to suggest." *Sherman v. Sheffield Fin., LLC*, 627 F. Supp. 3d 1000, 1013 (D. Minn. 2022). The dispute need not succeed at trial to reach the threshold of being bona fide. *Id. See also Ingram v. Experian Info. Sols., Inc.*, 83 F.4th 231, 240–41 (3d Cir. 2023) (holding that a furnisher must make reasonable investigation of disputes forwarded from CRAs, regardless of whether the furnisher considers the dispute to be frivolous).

That FCRA requires such a "bona fide or potentially meritorious dispute" serves the statutory goal of promoting "fair and accurate credit reporting[,]" 15 U.S.C. § 1981, without requiring furnishers to report every dispute, regardless of its merit. Here, Plaintiff's dispute is relevant to the HELOC provided by Defendant. She alleges that in her dispute she notified USAA that the draws above the credit limit occurred without her authorization, and that she provided the same information to the CRAs, along with copies of the HELOC Agreement and the property settlement between her and her ex-husband. Dkt. 11 ¶¶ 59, 61. This provides sufficient factual notice. Finally, the dispute—that Plaintiff had no hand in running up hundreds of thousands of dollars in debt—certainly suggests that she is "less financially irresponsible," *Sherman*, *id.*, than the undisputed report would indicate. In short, Plaintiff adequately demonstrates a bona fide dispute at this stage.

Consequently, the Court finds that Plaintiff sufficiently alleges her claims under the FCRA.

### b. Breach of Contract

The Court finds that Texas law applies to the breach of contract claim. Consequently, Plaintiff cannot invoke the implied duty of good faith and fair dealing as a theory of liability. Nor has Plaintiff stated a claim for simple breach of contract. For these reasons, which are fully explained below, the Court will dismiss this claim.

### i. Applicable state law

The issue of which state's law applies to Plaintiff's state-law claims was raised for the first time in USAA's Reply Brief in support of its Motion to Dismiss, Dkt. 24. USAA asserts that the Court should apply the contract law of Texas, rather than Virginia. *Id.* at 4–5. At the Motion to Dismiss hearing, Plaintiff argued that Virginia law should apply.

A federal court exercising diversity or pendent jurisdiction over state law claims must apply the choice of law rules of the forum in determining which law governs those claims. *Klaxon Company v. Stentor Electric Manufacturing, Co., Inc.,* 313 U.S. 487 (1941). This Court's forum is Virginia. "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances," *Colgan Air v. Raytheon Aircraft,* 507 F.3d 270, 275 (4th Cir. 2007). So the Court will give the choice of law provisions in the HELOC contract full effect.

The HELOC contract states that Texas law governs "interest rate and related charges[.]" Dkt. 11-1 ¶ 34. The law of the state where the HELOC property is located "will apply to the extent legally required."[4] *Id.* So while the contract provides guidance as to the law applicable to two categories of issues, it provides no guidance as to issues beyond the two identified categories. Therefore, the Court must go further in applying Virginia's choice of law rules.

In Virginia, "[q]uestions concerning the validity, effect, and interpretation of a contract are resolved according to the law of the state where the contract was made." *Seabulk Offshore*, 377 F.3d at 419 (citing *Woodson v. Celina Mut. Ins. Co.*, 177 S.E.2d 610, 613 (Va. 1977)). The Complaint does not specify where the HELOC contract was made. The Court could reasonably infer that Plaintiff and her ex-husband signed the contract, and so accepted and formed it, in Virginia. However, both Virginia and Texas adhere to the plain meaning rule of contract interpretation, *see Berry v. Klinger*, 300 S.E.2d 792, 796 (Va. 1983); *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). So the Court's interpretation of the HELOC contract, under either state's law, must give unambiguous terms their ordinary meaning.

---

[4] USAA argues that this category is strictly limited to matters of foreclosure. Dkt. 24 at 5.

"[T]he law of the place of performance," however, governs "questions arising in connection with the performance of a contract[.]" *Equitable Tr. Co. v. Bratwursthaus Mgmt. Corp.*, 514 F.2d 565, 567 (4th Cir. 1975) (citing *Arkla Lumber & Mfg. Co. v. W. Va. Timber Co.*, 132 S.E. 840, 842 (Va. Ct. Sp. App. 1926)). Here, the question is whether USAA's actions breached the contract: an issue of performance. Under Virginia law, the place of payment on a loan determines where a contract is performed. MICHIE'S JURIS. OF VIRGINIA AND WEST VIRGINIA, *Conflict of Laws, Domicile and Residence* § 25 (citing *Ware v. Bankers' Loan & Inv. Co.*, 29 S.E. 744 (Va. 1898) (holding that although money was lent in Virginia and a Virginia property secured the loan, New York law governed because the loan was payable to an office in New York)). Because the HELOC contract requires payments to USAA (Dkt. 11-1 ¶ 2), and USAA is based in Texas (Dkt. 11 ¶ 21), Texas is the place of performance. Therefore, the Court must apply Texas law when considering USAA's performance of the contract.

Texas does not recognize the implied duty of good faith and fair dealing except in very limited circumstances. *See Eng. v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983) (stating that the "concept [of the implied covenant of good faith and fair dealing] is contrary to our well-reasoned and long-established adversary system" and that the implied covenant did not apply to a contract between homeowners and mortgagee); *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987), *holding modified by Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826 (Tex. 1990) (stating that "a special relationship" between contracting parties may give rise to a duty of good faith and fair dealing). So breach of the implied duty of good faith and fair dealing is not available as a theory of liability. The Court will therefore proceed to consider Plaintiff's simple breach of contract claim.

> *ii. The alleged breaches of the HELOC contract*

First, Plaintiff argues that USAA breached the HELOC contract by changing its terms without written permission from either her or Mr. Barnes. She contends that USAA changed the terms of the contract by increasing the HELOC's $75,000 credit limit. Dkt. 11 ¶ 128.

By contrast, USAA points out that ¶ 6 of the HELOC contract permits it "at its option" to grant a request to lend money above the HELOC credit limit. Dkt. 17-2 at 9. The HELOC contract also specifies that the "Credit Limit will not be increased if [the borrowers] overdraw the line of credit." Dkt. 11-1 ¶ 6. Consequently, USAA argues, the money advanced above the $75,000 credit limit does not change the terms of the contract. Dkt. 17-2 at 9.

The Court agrees with USAA. The contract contemplates the loan of money *above* the credit limit and addresses the consequences of such a loan. Consequently, the advances did not change the terms of the contract. This aspect of the contract also eliminates one of Plaintiff's alternative theories—that USAA is liable for breach of contract because it "was tricked" by her ex-husband into granting the advances, and so failed to exercise the discretion required to allow advances "at its option." *Id.* ¶ 41. Alleging that USAA was duped into taking actions that are allowed for by the agreement cannot, without more, support the proposition that USAA *breached* the agreement.

The second alleged unilateral alteration is that USAA removed Plaintiff from the HELOC account. Dkt. 11 ¶ 132. To support this, Plaintiff alleges that USAA refused to give her information about the HELOC account and that the HELOC did not appear in her online portal. *Id.* ¶¶ 35, 55. USAA responds that the HELOC agreement has no mention of an online portal, and that Plaintiff fails to allege facts sufficient to show that she was removed from the agreement. Dkt. 17-2 at 11.

11

On this point, the Court again agrees with USAA. The terms of the HELOC agreement do not address online access. The allegation that USAA refused to provide information to Plaintiff does not mean that Plaintiff was removed from the HELOC account.

Finally, Plaintiff argues that USAA breached the HELOC agreement by failing to send notices to her individually. Dkt. 11 ¶ 131. She points to ¶ 1.A of the HELOC agreement, which defines terms used in the agreement. These include the following: "The pronouns 'I,' 'me,' and 'my' refer to all Borrowers signing this Agreement, jointly and individually[.]" *Id.* To make her argument, Plaintiff pairs that definition with this contract provision:

> 28. **Periodic Statements.** If I have an outstanding balance on my account or have any account activity, you will send me a periodic statement at the end of each Billing Cycle. This periodic statement will reflect, among other things, credit advances, finance charges, other charges, payments made, other credits, my previous account balance and my new account balance. The periodic statement will also identify my Minimum Payment for the cycle and the date it is due[].

Dkt. 11-1 ¶ 28; Dkt. 11 ¶ 51.

Plaintiff contends that the combination of these sections—that "me" means *both* Plaintiff and her ex-husband, and that USAA committed to send notices of outstanding balances to "me"—means that USAA had an obligation to send notices of account activity to *both* of the co-signers of the loan. Dkt. 11 ¶ 51.

However, as USAA notes, the HELOC agreement also contains a provision that "[n]otice to one Borrower will be deemed to be notice to all Borrowers." Dkt. 17-2 at 10; Dkt. 11-1 ¶ 32. Plaintiff argues that this provision should not apply to the "Periodic Statements" provision, because the terms appear in separate sections and notices are not the same as periodic statements. Dkt. 19 at 15–17.

USAA responds that under both Texas and Virginia law, a contract must be construed as a whole, not in disjointed portions. Dkt. 24 at 13. Consequently, it argues, there is no merit in the

12

idea that the contract provision that specifically addresses notice requirements does not apply to periodic statements about the HELOC. *Id.*

USAA is correct that the Court, in interpreting the HELOC agreement, must look to the whole of the contract. *See Drs. Co. v. Women's Healthcare Assocs., Inc.*, 740 S.E.2d 523, 526 (Va. 2013) (quoting *Cappo Mgmt. V, Inc. v. Britt,* 711 S.E.2d 209, 211 (Va. 2011)) ("We have said that 'when considering the meaning of any part of a contract, we will construe the contract as a whole'"); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex. 1994) ("The contract must be considered as a whole … no one phrase, sentence, or section of a contract should be isolated from its setting and considered apart from the other provisions.") (cleaned up, citations omitted).

Considering the contract as a whole, the Court can find no reason why a provision addressing the delivery method of "any notice" would not apply to the delivery method for periodic statements. The HELOC agreement provides that notice would be given via mail to "the appropriate party's address above, or to any other address designated in writing." Dkt. 11-1 ¶ 32. Plaintiff alleges that her ex-husband changed the address of record for HELOC correspondence to his own individual address, and that USAA "allowed the HELOC statements to be sent to an address other than the Residence even though Mr. Barnes's residence was not the property against which the HELOC was secured." Dkt. 11 at 39. USAA's mailing of notices to the address of Plaintiff's ex-husband, though perhaps dubious business practice, was within the terms of the agreement. Consequently, Plaintiff does not sufficiently allege breach of contract.

    c. *Declaratory Judgement*

Finally, Plaintiff seeks a declaratory judgment that the HELOC debt is unenforceable against her. Dkt. 11 ¶¶ 141–47. In support, she argues that USAA waived the right to hold her

liable by removing her from the HELOC account; failing to provide access to HELOC information through Plaintiff's online portal; sending monthly statements only to her ex-husband; refusing to provide Plaintiff with HELOC records and requiring her attorney to subpoena them; and allowing her ex-husband to unilaterally modify the terms of the HELOC agreement. *Id.* ¶ 142.

USAA argues that the HELOC agreement does not forbid any of the actions which Plaintiff points to, and that Plaintiff has not identified any behavior indicative of waiver. Dkt. 17-2 at 16–17. It also cites the contract provision that "no delay or forbearance on [USAA's] part in exercising any of [USAA's] rights or remedies will be construed as a waiver by [USAA], unless such waiver is in writing and is signed by [USAA]." Dkt. 11-1 ¶ 26.

Because Texas law governs USAA's performance of the HELOC agreement, the Court will apply Texas law in its consideration of whether USAA's conduct indicates waiver. In Texas, waiver "is defined as 'an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right.'" *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (*quoting Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987)). Waiver hinges on intent, and "for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances." *Id.* *citing *Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass'n, Inc.*, 1 S.W.3d 108, 111 (Tex. 1999)). It "is ordinarily a question of fact." *Id.* Plaintiff makes no allegation that USAA expressly waived any rights.

As discussed above, Plaintiff does not sufficiently allege that she was removed from the HELOC account. And while USAA's failure to provide access to HELOC information through Plaintiff's online portal is unfortunate, that failure does not breach the terms of the HELOC agreement. Likewise, USAA acted within the agreement when it sent HELOC statements only to

14

Plaintiff's ex-husband. And while he changed the address of record and requested advances above the credit limit, USAA's actions in response also fell within the HELOC agreement. The Court cannot conclude that these conduct allegations constitute indication of waiver, because USAA either acted within the terms of the agreement or just did not provide an additional service that was neither contemplated by the agreement nor requested by Plaintiff.

USAA's refusal to provide Plaintiff with statements as to the HELOC account presents a closer question. Plaintiff alleges that her ex-husband's draws on the HELOC occurred between June and October 2022. Dkt. 11 ¶ 40. Plaintiff became aware of "the increased account balance" in "approximately September 2022." *Id.* ¶ 50. She alleges that at some point after draws had occurred—how many draws is unclear—USAA sent "letters on the online portal demanding [Plaintiff] pay past due sums on the HELOC." *Id.* ¶ 35. At some point during this time, when Plaintiff contacted USAA to clarify what was going on and dispute her liability, USAA refused to send her statements, instead referring her to the online portal. *Id.* ¶ 56. The statements remained inaccessible to Plaintiff until her divorce attorney acquired them from USAA via subpoena. *Id.* ¶ 56. That occurred in December 2022. *Id.*

Standing alone, USAA's refusal to provide information about an account to which Plaintiff was a party might suggest that USAA intended to treat Plaintiff as a non-party to the agreement—and a non-party would not be liable for the HELOC loan. However, according to Plaintiff's own allegations, this refusal occurred *in the context* of her receiving demand letters from USAA as to overdue payments on the HELOC account. Given this context, Plaintiff has not plausibly alleged "intentional conduct inconsistent with claiming [USAA's] rights" accompanied by "surrounding facts and circumstances," which clearly demonstrate intent to waive. *Jernigan*, 111 S.W.3d at 156.

Plaintiff has not plausibly alleged a claim for declaratory judgment based on waiver. Because the declaratory judgment claim will be dismissed, the Court will not address USAA's arguments that Plaintiff is also estopped from pursuing declaratory judgment and that her ex-husband is a necessary party as to this claim.

In conclusion, USAA's Motion to Dismiss, Dkt. 17, is **GRANTED in part**: Claims Four and Five are **DISMISSED**. The Motion is **DENIED** as to Claims One, Two, and Three.

It is so **ORDERED**.

The Clerk of the Court is hereby directed to send this Memorandum Opinion & Order to all counsel of record.

Entered this  28th   day of May, 2024.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE